United States District Court
Southern District of Texas
FILED

MAR 05 2021

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas

ENTERED
March 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO PAZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:21-CV-0056 |
| | § | |
| STATE OF IDAHO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Plaintiff FEDERICO PAZ, an inmate at the Idaho State Correctional Institution ("ISCI"), is currently serving a life sentence for first degree murder.[1] He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, seeking redress for alleged violations of his constitutional rights during his jury trial and subsequent imprisonment. (Dkt. No. 1). Plaintiff's claims are based in part on allegations that he was repeatedly harassed and assaulted in a sexual manner through a series of fantastical acts going as far back as the 1970s. Plaintiff also seeks to prevent the further administration of involuntary mental health treatment at the ISCI.

The complaint is now ready for review in accordance with the screening provisions of 28 U.S.C. § 1915A of the Prison Litigation Reform Act (the "PLRA"), which apply as here to a civil action where a prisoner seeks redress from a governmental entity or its officers and employees.

This case was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). After review of the record and relevant law, the undersigned respectfully RECOMMENDS that Plaintiff's claims be DISMISSED as malicious to the extent they are duplicative of those raised in an ongoing litigation originally filed before the U.S. District

---

[1] Plaintiff's name can be used to query the Idaho Department of Correction's Offender Search page at https://www.idoc.idaho.gov/content/prisons/offender_search/ (last visited March 2, 2021).

Court for the District of Idaho styled as *Paz v. Ramirez, et al.*, Case No. 1:20-CV-0013-BLW (the "Idaho Case") and because the claims are otherwise frivolous. Also pending is Plaintiff's Application to Proceed In Forma Pauperis (the "IFP Application") (Dkt. No. 1-1), which the undersigned RECOMMENDS be DENIED as MOOT.

## I. BACKGROUND

In 1988, Plaintiff was convicted following a jury trial in the District Court of the Third Judicial District, Canyon County, Idaho for killing Gerry Bright ("Bright") and wounding Randall Gould ("Gould") and Larry Page with a semi-automatic weapon at a restaurant. *See State v. Paz*, 798 P.2d 1 (Idaho 1990).

Plaintiff filed the complaint in the Idaho Case in January 2020. Idaho Case, Dkt. No. 3. Named as defendants were the State of Idaho, the State of Oregon, the City of Caldwell, Idaho, and the Third Judicial District. *Id.* at 1. Concerning his trial, Plaintiff alleged in part as follows:

> Former Sheriff George Nourse came into the courtroom naked with a gun equipped with a silencer to try to stop me from saying that it was his daughter Dee Nourse who shot Gould after asking him for permission. She was at the prosecutor's table. District Attorney Richard Harris pulled out a one-hand butt shot-gun and said, "I authorized it for him."
>
> When I took the stand, Armando Garcia and Santos Garza ("Garza") were both naked squatting next to me and Judge Goff says, "You willingly testified." Garza went to Judge Goff's right side and said, "That's all I wanted." When I wrote to Judge Goff asking him about this, he said, "It was probably a clerk of the court or an officer of the law."

*Id.* at 5 (edited for readability). Plaintiff raised the following allegations, among others, as to his ensuing confinement at the ISCI:

> In the Spring of 1988 in Building 8 at ISCI, Roy Anthony ("Anthony") was impersonating an elder man working as an officer. At ISCI in the Spring of 1998, he was again impersonating an elder man working as an officer at C-Block. In the Spring of 2019 at ISCI, he was impersonating inmate Larry Young and a young officer in Building 16A. One time he came in at ISCI to Building 16 impersonating a detective along with his cousin Donny Ray Pegram ("Pegram") to interrogate me

> about a murder at Mt. Angel, Oregon in 1976.
>
> At ISCI in 1990, Garza told the plumbers to put plastic pipes called Teflon through the sewer pipes, and he connected them to my sink in B-Block.
>
> In the Spring of 1990 at ISCI at B-Block, Garza repeatedly took off my clothes and took me walking in the City of Caldwell. One time he put a bull penis on my head fastened with a leather harness.
>
> At ISCI in 1990 at B-Block, Dee Nourse brought Bright, the supposed deceased, and said, "Did you think I was going to let you kill!"
>
> * * *
>
> Twice in the Spring of 2018, Anthony took off my clothes in front of Building 16 at ISCI and carried me running all over the prison.
>
> On October 25, 2019, Anthony had the guards open my cell, took off my clothes, and grabbed my anus as I lay on my bed of Building 8 at ISCI on protective status.
>
> * * *
>
> Garza, Anthony, and Kip McUs have been putting excrement in my food that the guards would hand me throughout the years.
>
> In the Spring of 2019, Anthony put sperm on top of my ice cream that the inmate servers gave me, he later told me.

*Id.* at 2-4 (edited for readability).

In terms monetary relief, Plaintiff sought damages in the amount of $900 million, plus $900 million in punitive damages, and an injunction preventing any defendant from entering the institution of Plaintiff's confinement. Idaho Case, Dkt. No. 6 at 6.

Plaintiff then filed a motion to file an amended complaint in February 2020, raising the following allegations:

> I was forced to witness: the murder of three Mexican inmates in the Spring of 1988 at the old chapel site at ISCI by Pegram, a civilian of the City of Caldwell; the death of Officer Paz in the Spring of 1988 at the ISCI Administration Building by Donald Paradis, a death row inmate; and the death of Letty of California in 1990 at IMSI Tier 2 of B-Block by Chuck, a civilian of Greenleaf, Idaho.

\* \* \*

> At night, the guards at ISCI open my cell for Anthony, a civilian of the City of Caldwell, who is always sexually abusing me and plucking my eyebrows even to this day.

Idaho Case, Dkt. No. 9 at 1-2 (edited for readability).

For purposes of relief, Plaintiff indicated that "[t]hough mental health was the way off death row," he "want[ed] all mental health treatments stopped[,] including the administering of monthly injections." *Id.* at 2.

On April 23, 2020, the district court in the Idaho Case issued an initial screening order pursuant 28 U.S.C. §§ 1915 and 1915A. Idaho Case, Dkt. No. 10; *Paz v. Ramirez*, 2020 WL 1963468 (D. Idaho Apr. 23, 2020). Through the screening order, the district court laid out most of the factual allegations above, deeming them "nonsensical, fanciful, and implausible." *Paz*, 2020 WL 1963468 at \*1-3. The district court did, however, deem cognizable Plaintiff's desire to cease the involuntary administration of medical treatment pursuant to the Due Process Clause of the Fourteenth Amendment. *Id.* at \*3 (citing *Riggins v. Nevada*, 504 U.S. 127, 135 (1992)).

The district court concluded that Plaintiff had improperly named as defendants the State of Idaho, the State of Oregon, the City of Caldwell, and the Third Judicial District. *Id.* at \*3-4. But the district court liberally construed Plaintiff's naming of the State of Idaho to include an official capacity claim for injunctive relief against Al Ramirez, the warden of the ISCI, insofar as he had the authority to order implementation of court orders as to Plaintiff's psychiatric treatment. *Id.* at \*3 (citing Fed. R. Civ. P. 25(d) (allowing a court to order the substitution of public officers as parties)). The district court thus substituted Warden Ramirez in his official capacity for the State of Idaho and terminated as defendants the other named governmental entities. *Id.* at \*4.

Moreover, rather than have Plaintiff provide details of his involuntary medication, the district court ordered Warden Ramirez to submit within 120 days a report consistent with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), which contemplates a pre-answer investigation by prison officials regarding the incident behind a prisoner's lawsuit. *Paz*, 2020 WL 1963468 at *3 (citing *Martinez*, 570 F.2d at 319). Plaintiff was ordered to file an amended complaint within 30 days after receipt of the *Martinez* report. *Id.* at *3. The district court specifically ordered, however, that "[n]o claims except [Plaintiff's] claim that he should not be administered psychiatric medication without his consent shall be included in the amended complaint." *Id.*

On October 13, 2020, after Warden Ramirez's submission of the *Martinez* report and Plaintiff's submission of amended pleadings and related motions, the district court issued a successive screening order. Idaho Case, Dkt. Nos. 12, 15, 16, 18. In reviewing the *Martinez* report, the district court concluded that Plaintiff was not being medicated involuntarily (nor in the recent past) and, therefore, that his related constitutional claim—the only viable one raised in the original complaint—was subject to dismissal. Idaho Case, Dkt. No. 18 at 2. As for Plaintiff's filings, the district court noted Plaintiff's new allegations such that, in 1989, correctional officers made Plaintiff eat the vagina of a dog, and that Anthony was always plucking his eyebrows at ISCI. *Id.* at 3. Because the pleadings did not state any plausible allegations and further opportunity to amend would be futile, the district court concluded, Plaintiff's entire action was dismissed with prejudice and any ancillary motions denied. *Id.* at 3-4; Idaho Case, Dkt No. 19 (Judgment).

Less than one week after the dismissal, on October 19, 2020, Plaintiff mailed the instant complaint to the Clerk of Court. (*See* Dkt. No. 1-5). As noted, the pleadings here are duplicative of those in the Idaho Case. More specifically, Plaintiff appears to have simply re-submitted copies of several documents previously filed. The first page of the complaint, for example, includes an

inmate filing stamp listing the case number and filing date for the Idaho Case. (Dkt. No. 1 at 1). Attached to the complaint are copies of many of Plaintiff's ancillary filings and motions, including the IFP Application and an amended pleading filed after the *Martinez* report. (*See* Dkt. Nos. 1-1 & 1-3).

Subsequently, Plaintiff filed a notice of appeal to the Court of Appeals for the Ninth Circuit in the Idaho Case. Idaho Case, Dkt. No. 20. The district court in the Idaho Case denied an associated request by Plaintiff to proceed in forma pauperis on appeal, concluding that the appeal was frivolous and taken in bad faith. Idaho Case, Dkt. No. 25. The appeal is currently pending while the Ninth Circuit reviews Plaintiff's briefing as to why the matter is not frivolous and should go forward. *See Paz v. Ramirez*, App. Case No. 20-35952.

## II. LEGAL STANDARD

The PLRA mandates the screening of any civil complaint by a prisoner against a governmental entity or its officers and employees. 28 U.S.C. § 1915A(a). Any claim meeting certain statutory conditions must be identified and dismissed. *Id.* § 1915A(b). A claim is subject to dismissal if it either: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; (iii) or seeks monetary relief against a defendant who is immune from such relief. *Id.*

A "frivolous" claim lacks an arguable basis in law or fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, such as if it alleges the violation of a legal interest that clearly does not exist. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (quotations omitted). A claim is factually frivolous if the facts alleged are clearly baseless, which encompasses allegations that are fanciful, fantastic, and delusional. *Denton*, 504 U.S. at 32-33 (quoting *Neitzke*, 490 U.S. at 325, 327, 328) (quotations omitted).

A claim may be deemed "malicious" where it duplicates the same prisoner's allegations in another pending federal lawsuit or even a prior litigation. *Ellis v. United States*, 2021 WL 260428, at *3 (N.D. Tex. Jan. 26, 2021) (citing *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993)).

### III. ANALYSIS

Plaintiff's claims here are malicious because they are merely duplicative of those in the Idaho Case. It bears repeating that Plaintiff filed the instant complaint almost immediately after the Idaho Case was dismissed by the district court. Plaintiff also filed a near contemporaneous appeal of the dismissal, which appeal remains pending before the Ninth Circuit.

Otherwise, the undersigned agrees with the district court in the Idaho Case that Plaintiff's claims are frivolous for purposes of the PLRA. Even ignoring obvious limitations-related concerns, Plaintiff's claims are based primarily on fantastic and delusional factual allegations. While some of the underlying allegations, standing alone, may not sound delusional of themselves, this does not preclude the summary dismissal of the entirety of Plaintiff's complaint.

Courts have dismissed complaints based on allegations that turn frivolous when viewed in their totality. For example, the plaintiff in *Cooper v. Belcher* asserted that he was sexually assaulted by numerous law enforcement authorities and correctional officers, on orders of a higher authority, in retaliation for his filing of lawsuits and administrative grievances. 2010 WL 3359709, at *1, 8 (D. Colo. Aug. 25, 2010). The court, dismissing the claims as frivolous, recognized that—

> —sexual assaults do occur in prison and that sometimes such acts are perpetrated by corrections employees. Such conduct is not to be tolerated. However, *while each underlying action taken separately is not necessarily frivolous, a different picture emerges when all the filed actions are viewed together. Denton*, 504 U.S. at 29. That so many persons in various locations, whether presently or previously implicated, including attorneys at the Larimer County District Attorney's office, would engage in direct or indirect acts of retaliatory sexual molestation or assault of Plaintiff is irrational and wholly incredible. Plaintiff's allegations strongly suggest a malicious purpose behind Plaintiff's filings and the fantastic and delusional nature of his claims.

*Cooper*, 2010 WL 3359709 at *8 (emphasis added and internal citation modified).

Here, Plaintiff appears to seek redress from governmental entities, including the State of Idaho, based on allegations that correctional officers with the ISCI allowed civilians, like Anthony, to access ISCI buildings so they could harass Plaintiff and sexually assault him. This claim is not utterly outlandish of itself. But, as in *Cooper*, it takes on a different aspect considering how pervasive Plaintiff alleges the wrongful conduct to have been. Overturning the scale on the side of frivolousness are the sexually bizarre details of the alleged conduct.

Plaintiff's claim raising involuntary medical treatment is similarly meritless considering the factual matter that any treatment Plaintiff may be receiving is not in fact involuntary.

For these reasons, the complaint should be subject to summary dismissal.

## IV. CONCLUSION

### *Recommended Disposition*

After review of the record and relevant law, the undersigned Magistrate Judge respectfully RECOMMENDS that Plaintiff's claims be DISMISSED as malicious to the extent they are duplicative of those raised in the Idaho Case and because the claims are otherwise frivolous. The undersigned further RECOMMENDS that the IFP Application (Dkt. No. 1-1) be DENIED as MOOT.[2]

### *Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed.

---

[2] Regardless, the IFP Application is deficient. Apart from an affidavit of indigency, a prisoner seeking to appear in forma pauperis must also submit a certified copy of the trust fund account statement (or institutional equivalent) "for the 6-month period immediately preceding the filing of the complaint" from any institutions in which the prisoner is or was confined. 28 U.S.C. § 1915(a)(1), (2). Failure to provide a proper trust fund statement may result in the denial of an in forma pauperis application. *See Harmon v.*

R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to forward a copy of this document to Plaintiff by any receipted means.

DONE at McAllen, Texas this 5th day of March 2021.

J. SCOTT HACKER
United States Magistrate Judge

---

*U.S. Court of Appeals for the Fifth Circuit*, 1996 WL 435463, at *1 (E.D. La. Aug. 1, 1996). Because Plaintiff merely submitted duplicates of the filings from the Idaho Case, the complaint and the IFP Application, including the trust fund statement, are dated from January 2020. (Dkt. Nos. 1, 1-1 & 1-2). These documents, however, appear to have been mailed by Plaintiff and received by the Clerk approximately ten months later in October 2020 (Dkt. No. 1-5), meaning that Plaintiff's trust fund statement fails to cover the required six-month period preceding the filing of this case.